## Guthrie v. Baton, Appellant.

*Vendor and vendee—Contract—Forfeiture—Equity.*

Where the owner of an undivided one-fourth interest in a tract of land, all of the land being mortgaged, enters into an agreement to convey the land to another party on a day stated, if the vendee shall in addition to other payments pay one-fourth of the mortgages on the land, and the vendee although ready and willing to pay the one-fourth of the mortgages on the day stated is unable to do so because of an extension of the mortgages secured by the owners of the other three-quarters of the land, and by the refusal of such owner to accept the payment of the one-fourth of the mortgages, the vendor cannot take advantage of the extension to declare a forfeiture, there being no forfeiture clause in his agreement with the vendee.

Argued Nov. 4, 1908. Appeal, No. 5, Oct. T., 1909, by defendant, from decree of C. P. No. 4, Allegheny Co., First Term, 1908, No. 383, on bill in equity in case of W. A. Guthrie, W. B. Schofield, H. C. Booz and D. P. Pugh v. George S. Baton. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an accounting and for a deed of conveyance.

SWEARINGEN, J. P., filed the following findings of fact and conclusions of law:

### FINDINGS OF FACT.

1. On April 12, 1904, George S. Baton, one of the defendants, was the owner of one-fourth, undivided, of a tract of coal lands, situate in Morris Township, Washington county, and in Morris township, Greene county, Pennsylvania, and containing 4,226.378 acres. The legal title to said coal lands was held under an agreement in the name of J. W. Dawson, trustee for himself, for O. W. Kennedy, for S. M. Graham, and for said George S. Baton in equal parts. The said coal lands had been purchased in the name of J. W. Dawson, and in 1902 the said George S. Baton was the owner of a half interest therein. In 1903 the latter disposed of half his interest to said Kennedy and Graham, and Dawson was made trustee. The purchases were for part cash and the unpaid purchase money was secured by mortgages.

2. Prior to April 12, 1904, the said George S. Baton had been unable to meet his obligations upon the purchase of said coal lands and he had requested H. C. Booz and the plaintiffs to undertake the payment thereof. A short time afterwards the plaintiffs agreed to the undertaking. Thereupon, upon said date, to wit: April 12, 1904, the said George S. Baton, party of the first part, entered into a written contract with W. A. Guthrie of Indiana, W. B. Schofield, H. C. Booz of Philadelphia and D. P. Pugh of Norristown, state of Pennsylvania, parties of the second part, wherein, after reciting that there was due by said George S. Baton to J. W. Dawson, trustee, the sum of $3,985.64, being the amount which said Baton was in arrears upon his share of said mortgages, it was agreed that said second parties should pay to said J. W. Dawson, trustee, the sum of $4,000 upon the signing of said agreement, and the further sum of $1,000 on May 8, 1904, with which to pay Baton's share of a note, which payments were to be in full of the balance due by said Baton upon said mortgages theretofore paid by the said J. W. Dawson, trustee. It was further agreed that said second parties should pay said Baton's share (one-fourth) of said mort-

gages, according to the schedule annexed as the same should fall due in these proportions, viz.: W. A. Guthrie, five-sixteenths, W. B. Schofield, five-sixteenths, H. C. Booz, four-sixteenths and D. P. Pugh, two-sixteenths.    The agreement, however, provided as follows:

"Third.    And whereas the last of said payments (except a dower mortgage of about $3,900) is due in the month of August, 1905.

"Now, it is agreed that if said payments shall continue to be made by the parties of the second part until the interest of said George S. Baton in all of said mortgages except the dower mortgage hereinbefore mentioned shall have been paid, and, if, upon the 26th day of August, 1905, the parties of the second part shall have paid the share of said George S. Baton in said mortgages, the parties of the second part shall have the right to pay to said George S. Baton the difference between one-eighth of the entire cost of said coal field and the amount of said Baton's interest in said mortgages, and upon such payment the said George S. Baton agrees to convey to said parties of the second part in fee the undivided one-eighth interest in said tract of coal lands to be held by the parties of the second part in the following proportions: The said W. A. Guthrie to hold the undivided five-sixteenths of said one-eighth interest; the said W. B. Schofield to hold the undivided five-sixteenths of said one-eighth interest; the said H. C. Booz to hold the undivided four-sixteenths of said one-eighth interest, and the said D. P. Pugh to hold the undivided two-sixteenths of said one-eighth interest.    If a sale of said coal property shall be made at any time before the 26th day of August, 1905, the said George S. Baton, shall in that case, pay the amount of his share of the mortgages due at the time of said sale, and the parties of the second part shall share in the proceeds of sale in the proportion which the amount actually paid in by them shall bear to the entire cost of the field at that date; the parties of the second part to share among themselves in the same ratio in which payments are to be made by them, to wit, the said W. A. Guthrie the five-sixteenths, the said W. B. Schofield the five-sixteenths, the said H. C. Booz the four-sixteenths and the said D. P. Pugh

the two-sixteenths. The parties of the second part shall pay such proportion of the taxes upon the field as the amount they have actually paid in at the time the taxes became due shall bear to the cost of the field."

It was finally agreed that said second parties should pay the one-fourth of the interest on said dower mortgage, and if the same should fall due before August, 1905, they should pay the one-fourth thereof, but if it should not be paid before August, 1905, then they should pay the one-eighth thereof. A list of the properties and the cost and a list of the mortgages were attached to said agreement.

3. Pursuant to said agreement, the plaintiffs paid the said sums of $4,000 and $1,000 to J. W. Dawson, trustee, and they also promptly made such other payments on account of the share of said George S. Baton in said mortgages, both principal and interest, as they were called upon from time to time by said J. W. Dawson, trustee, until about November, 1907. The method of making these payments was this: Mr. Dawson would notify the plaintiffs that the interest or principal of a mortgage was about due, and state to them their one-fourth thereof, and then the plaintiffs would work out the amounts that they respectively were to pay, and would then forward checks for these amounts to Mr. Dawson. The plaintiffs acted in these matters individually each for himself.

4. Early in March, 1905, the said J. W. Dawson, trustee, acting for himself and his associates, secured an extension of the times of payment of the unpaid mortgages, and the same have not yet all fallen due. For this reason the plaintiffs could not pay the entire amounts which under said contract they were obliged to pay, so as to discharge in full the share of the said George S. Baton in said mortgages. The plaintiffs have been ready and willing, and they have offered to pay the entire share of said mortgages for which said George S. Baton was liable, but since the disputes hereinafter mentioned the said J. W. Dawson has refused to receive said payments and has returned the same to the plaintiffs.

5. Both W. A. Guthrie and H. C. Booz knew that said J. W. Dawson, trustee, and his associates contemplated securing an

extension of the said mortgages to which reference is made hereafter, before the extension was secured. The evidence does not show that either W. B. Schofield or D. P. Pugh had any knowledge upon this subject. None of the plaintiffs protested against the extension and none of the plaintiffs ever requested that an extension of any of said mortgages be secured. They conceded that the desire of the owners of the larger part of the field ought to control, although they were ready to meet their obligations.

6. As early as March 8, 1905, George S. Baton knew that J. W. Dawson, trustee, was engaged in securing extensions of said mortgages. He did not notify him not to do so, neither did he prior to August 26, 1905, notify any of the plaintiffs that he objected to the extension of said mortgages or that their agreement would be forfeited in case it was not performed on or before August 26, 1905. On March 9, 1905, said George S. Baton wrote the following letter to H. C. Booz:

"PITTSBURG, PA., March 9, 1905.

"Mr. H. C. Booz,
    "Ardmore, Pa.
"Dear Sir:
    "You undoubtedly know of the arrangement that Mr. Dawson entered into with Mr. Guthrie. He is also endeavoring and has succeeded to have some of the mortgages extended. This will put off the payments. The essence of our agreement is that your interest in the field is proportionate to the amount paid in. It calls for a settlement in August. It will be satisfactory to me to postpone this settlement until the mortgages are paid and it will make the payments easier on you. Will you kindly let me know if you and your partners will enter into an agreement with me similar to the first agreement by taking into account the extended payments? I will get a list of the same from Mr. Dawson and forward it to you.
                        "Yours truly,
                            "GEO. S. BATON."

On March 14, 1905, Mr. Booz replied as follows:

"PHILADELPHIA, PA., March 14, 1905.

"Mr. George S. Baton,

   "Mining Engineer,

      "Keystone Building, Pittsburg, Pa.

"Dear Sir:

"Replying to your letter of the 9th inst., I am waiting an expression of opinion from Mr. Guthrie, but as far as I myself feel, I do not think that you should make this request, since we take upon ourselves the obligation to pay those mortgages and should receive the benefit from such obligation. However, I will advise you when I hear from Mr. Guthrie.

> " Yours truly,
>
>                 "H. C. Booz."

The above appear to have been the only communications between George S. Baton and any of the plaintiffs with respect to the extension of said mortgages prior to April 27, 1907, except the following in a letter from George S. Baton to H. C. Booz dated October 13, 1905, sending some information as to acreage, viz.:

"You will notice that our agreement calls for a settlement in August. Of course this settlement was not made. Will you kindly let me know what is your understanding of how our interests stand at this time? I have not looked the matter up carefully, but do not anticipate any trouble in our coming to a final settlement."

No reply was made to this letter.

7. After the correspondence of March, 1905, mentioned in findings of fact six, the plaintiffs paid on account of George S. Baton's share of said mortgages, principal and interest, the sum of $3,390.53 to and including August 26, 1905, and thereafter to November 8, 1907, the further sum of $1,839.43. All of these payments were made without any objection on the part of George S. Baton.

8. April 26, 1907, George S. Baton wrote to H. C. Booz that Dawson, Kennedy and Graham had "decided to terminate the trusteeship" so that the property might go on record in the individual names of the owners, and he requested a meeting

with the plaintiffs for the purpose of a settlement. A meeting was arranged for May 13, 1907, but for some reason it was not held. In the following fall, however, the parties failed to agree upon a settlement.

9. Meantime the defendant, J. W. Dawson, trustee, had by deed dated February 11, 1907, conveyed unto the said George S. Baton an undivided one-fourth interest in said coal lands, and a like interest to said Kennedy and Graham. Dawson retained one-fourth and terminated the trusteeship. Mr. Dawson, however, continued to send notices to the plaintiffs and to receive their checks for the amounts to be paid by them until November, 1907. Subsequently the parties made an arrangement whereby the moneys to be paid by plaintiffs were received by George S: Baton pending the litigation but without prejudice to any of the rights of the parties.

10. The defendants together and individually have information which is necessary to settle the accounts between the plaintiffs and the defendants, and all this information the plaintiffs do not have.

11. At the trial, April 27, 1908, the record was amended by substituting as plaintiff the name of William K. McFarlin for that of W. B. Schofield, the latter's interest having been transferred to the former February 24, 1908.

CONCLUSIONS OF LAW.

1. The plaintiffs may join in this bill. They have a common cause of action arising out of the contract of April 12, 1904, mentioned in findings of fact two, and no separate defenses are involved. The jurisdiction in equity is sustained.

2. Time is not of the essence of the contract of April 12, 1904, mentioned in findings of fact two. No forfeiture is provided in said contract for failure to pay the entire share of the mortgages for which said George S. Baton was liable on or before August 26, 1905. Under the findings of fact the said George S. Baton is estopped from asserting that the rights of the plaintiffs are forfeited by reason of the extension of the time of payment of said mortgages mentioned in said contract.

3. The agreement of April 12, 1904, mentioned in findings

of fact two, is valid and still subsisting; a settlement between the parties thereto should be had thereunder and in like manner as if the share of George S. Baton's liability upon said mortgages had been paid by the plaintiffs at the expiration of the period named in said agreement, to wit: August 26, 1905.

4. The plaintiffs, having paid the amounts set forth in findings of fact three, they are entitled upon payment by them of the balance of said George S. Baton's liability upon said mortgages and payment by them to said George S. Baton of the difference between one-eighth of the entire cost of the coal field and the amount of said Baton's share of said mortgages to a conveyance in fee of the one-eighth, undivided, of said coal lands described in findings of fact one, in the proportions set out in said agreement mentioned in findings of fact two, to wit: W. A. Guthrie, five-sixteenths of one-eighth of the whole, H. C. Booz, four-sixteenths of one-eighth of the whole, D. P. Pugh, two-sixteenths of one-eighth of the whole, and William K. McFarlin, assignee of W. B. Schofield, five-sixteenths of one-eighth of the whole.

5. An accounting should first be taken between the defendants and the plaintiffs so as to ascertain the entire cost of said coal lands, the amounts paid thereon by the plaintiffs, the amounts yet remaining unpaid upon said mortgages, the amounts yet to be paid by the plaintiffs on account thereof, and the amount to be paid by the plaintiffs to said George S. Baton in pursuance of the agreement of April 12, 1904. Upon the amount to be paid by the plaintiffs to said George S. Baton he is entitled to receive interest from August 26, 1905. The accounting should also ascertain the amount of taxes to be paid by the plaintiffs and said George S. Baton pursuant to said agreement.

6. If the parties cannot agree a trustee should be appointed to receive the amounts to be paid by plaintiffs on account of the share of George S. Baton's liability upon said mortgages, and distribute the same to the proper mortgagees.

7. The deed heretofore made by J. W. Dawson, trustee, mentioned in findings of fact nine, is good as between the parties thereto, and said George S. Baton should convey to the

plaintiffs the one-eighth, undivided, of said coal lands in fee and free of any incumbrances upon his said interest which may have been entered since the date of said conveyance to him.

Let a decree be drawn in accordance with the foregoing findings of fact and conclusions of law.

*Error assigned* was the decree of the court.

*M. J. Hosack,* of *Hosack, Knox & Hosack,* for appellant.

*Thomas Patterson,* of *Patterson, Sterrett & Acheson,* for appellee.

PER CURIAM, January 4, 1909:

The decree is affirmed at the cost of the appellant on the findings of fact and the conclusions of law by the learned judge of the common pleas.